UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MB REO-FL CHURCH-2, LLC,

      Plaintiff,

v.                       Case No. 8:16-cv-276-T-33MAP

TAMPA FOR CHRIST CHURCH, INC.,
et al.,

      Defendants.
_____/

**ORDER**

This matter comes before the Court in consideration of Plaintiff MB Reo-FL Church-2, LLC's Motion for Summary Judgment and Declaratory Relief (Doc. # 107), filed on September 16, 2016. After two interlocutory appeals by Defendant Frank M. Bafford and several extensions of time, Bafford's response in opposition was due by May 29, 2017. (Doc. # 150). Bafford did not file a response in opposition. For the reasons below, MB Reo's Motion is granted.

## I.  **Background**

As noted on the undersigned's website, "[i]n deciding a motion for summary judgment, the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided the moving

party's statement is supported by evidence in the record."
U.S. Dist. Ct., M.D. Fla., Judicial Info, Tampa Division,
Virginia M. Hernandez Covington, Civil Motions,
http://www.flmd.uscourts.gov/judicialInfo/Tampa/JgCovington
.htm. Because Bafford failed to file a response and thereby
failed to specifically controvert the statement of material
facts provided by MB Reo, the Court deems the facts as laid
out in the Motion (Doc. # 107 at 2-10) admitted.

MB Reo owns the commercial property located at 9612 N.
26th Street and 9706 N. 26th Street, Tampa, Florida 33612.
(Doc. # 107-1 at ¶¶ 5, 6). The property was listed for sale
by MB Reo on October 12, 2015, with an asking price of
$799,000. (Id. at ¶ 7).

Over a span of five days, Bafford, on behalf of Defendant
Tampa for Christ Church, Inc., submitted three offers. (Id.
at ¶ 9). The first offer, in the amount of $675,000, was
submitted on October 14, 2015. (Id.). The second and third
offers followed in quick succession, the former for $799,000
on October 19 and the latter for the same amount but deleting
a condition for rezoning. (Id.). All the offers were based on
98%-100% financing. (Id. at ¶ 10). All the offers also
included a pre-approval form from Complex Capital Mortgage &
Finance, Inc., a non-party to this action. (Id.).

MB Reo responded to these offers on November 2, 2015, and indicated it could not accept an offer based on 98% financing. (Id. at ¶ 11). Furthermore, MB Reo requested Tampa for Christ Church provide certain financial information to enable MB Reo to sufficiently evaluate the third offer. (Id.). It is the regular practice of MB Reo's servicer to request information to prove ability to close a transaction when the buyer is unknown. (Id. at ¶¶ 3, 12). The servicer for MB Reo requested additional financial information from prospective buyers 29 times in 2016. (Id. at ¶ 12). Rather than providing the requested financial information, Defendants told MB Reo to contact their proposed lender. (Id. at ¶ 13). Because it normally does not communicate with lenders, MB Reo did not follow up with the proposed lender. (Id. at ¶ 14).

Then, on November 13, 2015, Bafford submitted a fourth offer for $803,000. (Id. ¶ 15). At the same time, Bafford accused MB Reo of racially discriminating against him. (Id.). MB Reo retained counsel to respond to Bafford's charge of racial discrimination. (Id. at ¶ 16). In a letter dated November 16, 2015, MB Reo's counsel set forth the reasons Bafford's offers were rejected, as well as the normal procedures MB Reo followed. (Doc. # 107-5).

Nevertheless, MB Reo deviated from its usual practice after it became clear Tampa for Christ Church would not provide the requested financial information. (Doc. # 107 at ¶ 17). On November 20, 2015, MB Reo indicated it would consider selling the property for, among other terms, $803,000, a due diligence period of 20 days, and no financing contingency. (Doc. # 107-6). Bafford neither accepted nor rejected the November 20, 2015, terms. Instead, on November 30, 2015, Bafford sent a series of emails that (1) reiterated his charge of discrimination, (2) asked for a copy of contracts from "the other buyers," and (3) indicated an attorney representing Bafford would be contacting MB Reo. (Doc. # 107-7). MB Reo followed up with a letter on December 1, 2015, which "emphatically den[ied] any claims of discrimination." (Doc. # 107-8 at 4-6). Counsel for MB Reo also sent an email on December 2, 2015, stating if MB Reo did not receive confirmation by December 4, 2015, that Tampa for Christ Church wished to proceed with the purchase, then MB Reo would consider Tampa for Christ Church to have withdrawn its interest in purchasing the property. (Id. at 1).

On December 3, 2015, Bafford responded that Tampa for Christ Church "unequivocal[ly] . . . wish[ed] to proceed." (Doc. # 107-9). The next day, MB Reo sent Bafford a draft

purchase and sale agreement; Bafford had until December 8, 2015, to execute and return the agreement. (Doc. # 107-10). But, Bafford did not execute the agreement. Rather, Bafford sent a series of emails between December 7 and December 8, 2015, wherein he made nonspecific objections to the terms of the agreement and reiterated his accusation of discrimination. (Doc. # 107-11). MB Reo responded by denying the charges of racial discrimination again and asking Tampa for Christ Church to provide its specific objections to the terms of the agreement by December 11, 2015. (Doc. # 107-12). Having received no specific objections, MB Reo ceased negotiations by letter dated December 11, 2015. (Doc. # 107-13).

Three days later, on December 14, 2015, Bafford filed a notice titled "Pending Housing Discrimination Complaint with Ownership Interests" in the Official Records of Hillsborough County, Florida. (Doc. # 107-14). This notice stated: Bafford "informs all interested parties that there's a pending housing discrimination complaint concerning the [property] . . . seeking a determination concerning his rights" thereto. (Id.). On December 28, 2015, Bafford filed a second document in the Official Records of Hillsborough County, Florida; namely, his "Amended Pending Housing Discrimination Complaint

5

with Ownership Interests." (Doc. # 107-15). Again, Bafford sought to "inform[] all interested parties that there[] [was] a pending housing discrimination complaint concerning the [property] . . . seeking a determination concerning his rights" thereto. (Id.). The amended document further stated that the complaint sought specific performance "of a contract illegally denied by discrimination." (Id.). "As a result of Bafford's recordings of Notices purporting to encumber the Property, MB REO has . . . been unable to sell the Property." (Doc. # 107-1 at ¶ 30).

On February 4, 2016, MB Reo instituted the pending action in this Court seeking to quiet title, damages for slander of title, and a declaratory judgment. (Doc. # 1). Bafford and Tampa for Christ Church were served on February 11, 2016. (Doc. ## 5, 6). About a month and a half later, on March 30, 2016, Bafford filed the administrative housing discrimination complaint he had been alluding to for several months. (Doc. # 107-17). This litigation proceeded and, upon MB Reo's motion, the Court dissolved the lis pendens Bafford had filed in the Official Records of Hillsborough County, Florida. (Doc. # 65).

And although counsel filed a notice of appearance on behalf of Bafford and Tampa for Christ Church, defense counsel

withdrew. (Doc. ## 38, 76). Because Tampa for Christ Church is a corporation and, per Local Rule 2.03(e), a corporation may only be heard in this Court through counsel, the Court directed Tampa for Christ Church to retain counsel. (Doc. # 87). When Tampa for Christ Church failed to retain counsel, the Court struck its pleadings. (Doc. # 97). Thereafter, because Tampa for Christ Church was technically in default, MB Reo applied for entry of Clerk's default, which was entered on August 26, 2016. (Doc. ## 98, 99).

MB Reo filed its pending Motion on September 16, 2016. (Doc. # 107). Much delay then ensued because of Bafford's filing of interlocutory appeals and repeated requests for extensions of time. (Doc. ## 108, 111-113, 115-117, 119, 130, 133, 136, 141, 142, 149, 150). The deadline for Bafford to file a response in opposition to the Motion was May 29, 2017. (Doc. # 150).

On May 22, 2017, Bafford filed a motion seeking an extension of the discovery deadline, which the Court denied on May 25, 2017. (Doc. ## 149, 150). The Court's May 25, 2017, Order reminded Bafford of the due date for his response. (Doc. # 150). But Bafford failed to timely file a response. Instead, after the deadline for responding to the motion for summary judgment had passed, Bafford filed a motion on June 8, 2017,

seeking reconsideration of the Court's Order that denied his requested extension of the discovery deadline. (Doc. # 152).

The next day, on June 9, 2017, the Court directed MB Reo to file a jurisdictional supplement. (Doc. # 151). MB Reo requested and received an extension of time. (Doc. ## 153, 154). Before the jurisdictional supplement became due, Bafford filed another interlocutory appeal on June 19, 2017. (Doc. # 155). The Court therefore deferred ruling on MB Reo's motion for summary judgment and Bafford's motion for reconsideration. (Doc. # 158). The Court also stayed and administratively closed the case pending resolution of the appeal. (Id.).

The Eleventh Circuit sua sponte dismissed the appeal for lack of jurisdiction on July 24, 2017. (Doc. # 162). Because the time for Bafford to respond to the motion for summary judgment has already passed and Bafford has not filed a response, nor sought an extension of time do so, the Court proceeds to disposition.

## II.  **Legal Standard**

The Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. 5800 SW 74th Avenue, Miami, Fla., 363 F.3d 1099, 1101 (11th

Cir. 2004) (internal citations omitted). Further, the Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but [it] must ensure that the motion itself is supported by evidentiary materials." Id.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at

trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only

proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Jurisdiction**

"Federal courts operate under a continuing obligation to inquire into the existence of subject matter jurisdiction whenever it may be lacking." <u>RES-GA Cobblestone, LLC v. Blake Const. & Dev., LLC</u>, 718 F.3d 1308, 1313 (11th Cir. 2013) (citing <u>Baltin v. Alaron Trading Corp.</u>, 128 F.3d 1466, 1468 (11th Cir. 1997)). "That obligation continues through every stage of a case, even if no party raises the issue." <u>Id.</u> (citing <u>Already, LLC v. Nike, Inc.</u>, 133 S. Ct. 721, 726 (2013)).

In reviewing the pending Motion, a question arose as to the existence of jurisdiction because MB Reo's jurisdictional statement — "[t]his Court has both diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331, 12 U.S.C. § 1819 and 28 U.S.C. § 2201-2202," (Doc. # 1 at ¶ 2) — suggested MB Reo was basing "the independent source of jurisdiction," <u>Goodin v. Fidelity Nat'l Title Ins. Co.</u>, 491 Fed. Appx. 139, 143 (11th Cir. 2012), for a declaratory judgment action on § 1819. And, as the Court explained in its June 9, 2017, Order, § 1819 does not provide a basis for exercising jurisdiction because the FDIC is not

a party in any capacity to this action. (Doc. # 151 at 3). The Court also found the allegations relating to diversity jurisdiction insufficient. (Id. at 3-6). Thus, the Court directed MB Reo to file a jurisdictional supplement. (Id. at 6).

MB Reo timely filed its jurisdictional supplement. (Doc. # 164). In its supplement, MB Reo states that it "declines to identify the partners of the limited partnerships in [its] ownership chain" and MB Reo elected not to substantiate the claim that the limited liability companies in its chain of ownership are diverse from Defendants. (Id. at ¶ 1). Given MB Reo's refusal to establish diversity of citizenship, the Court will not base the exercise of jurisdiction upon § 1332.

Further, this Court's "virtually unflagging obligation . . . to exercise the jurisdiction given [it]," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), and its "obligation to inquire into the existence of subject matter jurisdiction whenever it may be lacking," RES-GA Cobblestone, 718 F.3d at 1313, do not combine to create a duty to ferret out the jurisdictional bases for a plaintiff where the plaintiff's jurisdictional statement is ambiguous. Indeed, it is "the **party** seeking a federal venue [that] must establish the venue's jurisdictional requirements," Lowery v.

12

<u>Ala. Power Co.</u>, 483 F.3d 1184, 1207 (11th Cir. 2007) (emphasis added), and the Court may not act as counsel for a party, <u>see</u> <u>Lampkin-Asam v. Volusia Cty. Sch. Bd.</u>, 261 Fed. Appx. 274, 277 (11th Cir. 2008).

Although diversity jurisdiction has not been established, MB Reo clarifies via its jurisdictional supplement that the independent jurisdictional basis for its declaratory judgment count was asserted under the analytical framework of <u>Hudson Insurance Company v. American Electric Corp.</u>, 957 F.2d 826, 828 (11th Cir. 1992). (Doc. # 164 at 2-4). <u>Hudson</u> presents an exception to the well-pled complaint rule and directs a court to "determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." <u>Id.</u> at 828. Here, as now demonstrated by MB Reo, there is sufficient record material to show the anticipated coercive action by Bafford arises under federal law. (Doc. # 107-4) (showing that Bafford accused MB Reo of racial discrimination); (Doc. # 1-6 at 4) (showing that Bafford asserted his belief he was being discriminated against); (Doc. ## 1-14, 1-15) (showing that Bafford alleged to have instituted a complaint for housing discrimination)). Jurisdiction therefore exists under § 1331 and §§ 2201-2202, as interpreted in <u>Hudson</u>. The Court also

has supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367.

## IV. **Analysis**

### A. **Motion to Reconsider**

Before taking his third interlocutory appeal, Bafford filed a motion requesting that the Court reconsider its May 25, 2017, Order. (Doc. # 152). Because the motion to reconsider was filed within 28 days of the Court's May 25, 2017, Order, Rule 59(e) governs. Beach Terrace Condo. Ass'n, Inc. v. Goldring Inves., No. 8:15-cv-1117-T-33TBM, 2015 WL 4548721, at *1 (M.D. Fla. July 28, 2015).

"The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Anderson v. Fla. Dep't of Envtl. Prot., 567 Fed. Appx. 679, 680 (11th Cir. 2014) (quoting Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007)) (quotation marks omitted). Granting relief under Rule 59(e) is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." United States v. DeRochemont, No. 8:10-cr-287-T-24MAP, 2012 WL 13510, at *2 (M.D. Fla. Jan. 4, 2012) (citation omitted). Furthermore, "a Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised

prior to the entry of judgment." <u>Michael Linet, Inc. v. Vill.</u>
<u>of Wellington, Fla.</u>, 408 F.3d 757, 763 (11th Cir. 2005).

The parties had more than enough time to conduct
discovery in this case. And, Bafford was granted not one or
two or three, but four extensions of time to respond to the
pending Motion for summary judgment. (Doc. ## 113, 117, 131,
142). Despite all this time, Bafford did not file the motion
for extension of time to conduct discovery (Doc. # 149) until
well after the expiration of the discovery deadline. As noted
by the Court's Case Management and Scheduling Order (Doc. #
146 at 3), the Court may deny discovery-related motions as
untimely, if they are filed after the discovery deadline.
Such is the case here. And, rather than pointing to newly
discovered evidence or a manifest error of law or fact,
Bafford simply attempts to reassert the argument he
previously advanced. Bafford has failed to show the
extraordinary relief provided by Rule 59(e) is warranted. The
motion for reconsideration is denied.

B.  **Quiet Title**

"To state a cause of action to quiet title, the
[plaintiff] need[s] to allege [and prove] that (1) they had
title to the subject property; (2) a cloud on the title

existed; and (3) that the cloud was invalid." D'Alessandro v. Fid. Fed. Bank & Tr., 154 So. 3d 498, 499 (Fla. 4th DCA 2015).

The undisputed facts show MB Reo owns the property (Doc. # 107-1 at ¶¶ 5, 6). In addition, it is undisputed a cloud on the title existed due to Bafford's notices in the Official Records of Hillsborough County, Florida, which indicated a housing discrimination complaint that sought a determination of Bafford's rights to the properties was pending (Id. at ¶¶ 25, 26; Doc. ## 107-14, 107-15); Phillips v. Epic Aviation, LLC, No. 2:13-cv-410-FtM-29MRM, 2017 WL 202541, at *31 (M.D. Fla. Jan. 18, 2017) ("A lis pendens . . . operates as a cloud on the title . . . ."). As alleged by MB Reo, "[a]s a result of Bafford's recordings of Notices purporting to encumber the Property, MB REO has . . . been unable to sell the Property." (Doc. # 107-1 at ¶ 30). It is also undisputed the cloud created by Bafford's notices was invalid because the notices were defective (Doc. # 65) and a written contract for the sale of the property never existed (Doc. # 107 at ¶¶ 19, 22). MB Reo is entitled summary judgment on its quiet title claim.

### C.   <u>Slander of Title</u>

"To establish the elements of slander of title, the plaintiff must prove that the defendant has communicated to a third party a false statement disparaging title which has

caused the plaintiff actual damage." <u>Residential Cmtys. of</u> <u>Am. v. Escondido Cmty. Ass'n</u>, 645 So. 2d 149, 150 (Fla. 5th DCA 1994). Further, there is a distinction between presumed and actual malice. <u>Phillips</u>, 2017 WL 202541, at *28.

> In an action for slander of title, "malice" merely means a lack of legal justification and is said to be 'presumed' if the disparagement is false, if it caused damage, and if it is not privileged. [W]hen the defendant disparages plaintiff's title under circumstances supporting a privilege, the presumption of malice is rebutted and, as in a case of defamation, the plaintiff must then prove actual or genuine malice in order to recover. This means that malice, in the ordinary sense of the term, is not important at all except to defeat the defense of privilege or to enhance damages.

<u>Id.</u> (citation omitted).

The filing of a document in a county's official records satisfies the publication requirement. <u>Id.</u> at *30. Here, it is undisputed Bafford filed his notices in the Official Records of Hillsborough County, Florida. (Doc. ## 107-14, 107-15). Thus, the publication element is met.

Bafford's notices state that, as of December of 2015, a housing discrimination complaint was pending. (Doc. ## 107-14, 107-15). However, Bafford did not file his housing discrimination complaint until March 30, 2016. (Doc. # 107-17). Thus, the notices contained a material false statement. <u>Phillips</u>, 2017 WL 202541, at *32 (finding falsity requirement

met where lis pendens falsely indicated defendant initiated an action).

Moreover, it is undisputed Bafford's notices prevented MB Reo from selling its property. (Doc. # 107-1 at ¶ 30). As a result, MB Reo has been forced to carry the costs of the property, e.g., taxes, property management, and insurance. (Id.). Therefore, MB Reo is entitled to summary judgment on its slander of title claim.

### D.     Declaratory Judgment

Under § 2201, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although Bafford filed an administrative housing complaint and there is no evidence as to the complaint's status, the Court may still proceed with this action because an action under 42 U.S.C. § 3613 may be commenced "whether or not a complaint has been filed under section 3610(a) of this title and without regard to the status of any such complaint." 42 U.S.C. § 3613(a)(2).

MB Reo seeks a declaratory judgment against Tampa for Christ Church and Bafford "finding that no contract has ever existed between the Parties and that Defendants have no claims against Plaintiff or the Property, together with an award of

costs and such other and further relief as the Court deems just and proper." (Doc. # 1 at 12). But, in its Motion, MB Reo states it "does not seek any monetary relief against [Tampa for Christ Church], only a declaration that MB REO did not discriminate against it and that [Tampa for Christ Church] has no interest in the Property." (Doc. # 107 at ¶ 25).

Given that Bafford filed a housing discrimination complaint under the Fair Housing Act, 42 U.S.C. §§ 3600-3620, and filed two lis pendens, the issues before the Court are whether MB Reo racially discriminated against Bafford and whether a contract existed between Tampa for Christ Church and MB Reo. With respect to the discrimination charge,

> to prevail on a claim under the FHA, a plaintiff must demonstrate unequal treatment on the basis of race that affects the availability of housing. . . . A plaintiff can establish a violation under the FHA by proving (1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation.

Bonasera v. City of Norcross, 342 Fed. Appx. 581, 584 (11th Cir. 2009) (internal citations and quotation marks omitted). While the FHA does not apply to commercial property like that at issue here, see, e.g., Telesca v. Vill. of Kings Creek Condo. Ass'n, Inc., 390 Fed. Appx. 877, 881 (11th Cir. 2010) (defining what a dwelling is for purposes of the FHA), even if the FHA did apply, there is still no evidence showing MB

Reo treated Bafford unequally on the basis of race. The undisputed facts show MB Reo requested additional financial information in 29 other situations and, as a general matter, did not contact proposed lenders. (Doc. # 107-1 at ¶¶ 3, 12, 14). Bafford produced no evidence disputing those facts or otherwise suggesting that MB Reo only requested additional information from members of a protected class.

As to whether a contract existed between Tampa for Christ Church and MB Reo, Florida law has three elements for breach of contract claim: a valid contract, a material breach, and damages. Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). To have a valid contract, Florida law requires an offer, acceptance, and consideration. Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cty., Inc., 639 So. 2d 636, 637 (Fla. 5th DCA 1994). Furthermore, Florida's Statute of Frauds requires contracts for the sale of land to be in writing. Fla. Stat. § 725.01. Although several offers and counter-offers were volleyed back and forth, no single offer was ever accepted, nor was consideration given. In addition, the evidence shows a written agreement for the sale of the property was never executed. Thus, neither Tampa for Christ Church, nor its

representative (Bafford) has a claim to or interest in the property.

**E.    Damages**

MB Reo seeks a judgment against Bafford in the amount of $128,560.94, but it does not seek a money judgment against Tampa for Christ Church. (Doc. # 1; Doc. # 107 at ¶ 25). While MB Reo may recover damages and attorney's fees for slander of title, Atkinson v. Fundaro, 400 So. 2d 1324, 1326 (Fla. 4th DCA 1981), it may not do so for its quiet title claim, Price v. Tyler, 890 So. 2d 246, 252 (Fla. 2004) (statute governing actions to quiet title "does not authorize the award of damages and attorney's fees"). MB Reo is also entitled to its costs pursuant to Rule 54(d).

MB Reo's requested judgment is comprised of $51,372.70 in carrying costs related to the property, $74,435.25 in attorney's fees to have the notices of lis pendens removed, and $2,752.99 in costs to have the notices of lis pendens removed. (Doc. # 107-1 at ¶¶ 30, 31). However, the damages in the form of carrying costs were only calculated through September of 2016, and it is now July of 2017. In addition, although MB Reo asserts Atkinson, 400 So. 2d at 1326, supports its claim to costs as damages, Atkinson speaks only to attorney's fees as damages. But, MB Reo may recover costs

21

under Rule 54(d). To do so though, MB Reo must support its claim to costs with documentation showing its costs are recoverable under 28 U.S.C. § 1920. MB Reo is therefore directed to file a supplement, supported by competent evidence, by August 14, 2017, wherein MB Reo calculates its current damages and costs. Once that supplement is filed and reviewed, the Court will enter a single judgment consistent herewith.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff MB Reo-FL Church-2, LLC's Motion for Summary Judgment and Declaratory Relief (Doc. # 107) **GRANTED.**

(2) MB Reo is directed to file a supplement, supported by competent evidence, by August 14, 2017, wherein MB Reo calculates its current damages and costs.

(3) MB Reo is further directed to move without delay in filing a motion for default judgment against Tampa for Christ Church. The motion should be filed no later than August 14, 2017.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 31st day of July, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE